IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

RAYMOND L. PRICE,                        )
                                         )
                Plaintiff,               )
                                         )
v.                                       )       No. 3:03-CV-676
                                         )
JO ANNE B. BARNHART,                     )
Commissioner of Social Security,         )
                                         )
                Defendant.               )

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of

defendant Commissioner's final decision denying plaintiff's claim for disability insurance

and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social

Security Act. For the reasons provided herein, defendant's motion for summary judgment

[doc. 38] will be granted, and "Plaintiff's Motion for Judgment on the Record or Remand"

[doc. 28] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff was born in 1959 and has either a tenth or eleventh grade education.

[Tr. 94, 254]. He applied for benefits in September 2001, claiming to be disabled by

osteoarthritis, "thinning of bones," fallen arches, depression, and anxiety. [Tr. 51, 76, 88].

Plaintiff alleges a disability onset date of August 23, 2001, which is the approximate date that

he stopped working as a motel maintenance man.  [Tr. 51, 76, 89].  The Social Security applications were denied initially and on reconsideration.  Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on April 17, 2003.  [Tr. 249].

On August 26, 2003, the ALJ issued a decision denying benefits. Therein, he found that plaintiff suffers from "osteoarthritis, thinning of bones, fallen arches, depression, nerves and anxiety, and alcohol abuse," which are "severe" impairments but not equivalent, singularly or in concert, to any impairment listed by the Commissioner.  [Tr. 17].  Plaintiff's credibility was found to be "lacking" due to various misrepresentations pertaining to his considerable alcohol consumption.  [Tr. 20].  The ALJ concluded that plaintiff retains the residual functional capacity to perform a significant number of light jobs existing in the national economy.  [Tr. 21-23].  Plaintiff was accordingly found "not disabled."

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on November 1, 2003, notwithstanding the submission of one page of additional evidence.  [Tr. 5-6, 9, 247].  The ALJ's ruling therefore became the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481.  Through his timely complaint, plaintiff has properly brought his case before this court for review.  *See* 42 U.S.C. § 405(g).

## II.

### *Relevant Background*

Plaintiff now purports to be disabled by joint and foot pain, anxiety, irritable bowel syndrome, and cardiac problems. [Tr. 97, 257]. He states that "my life has change[d] from a very strong man to someone that is barely able to take care of himself." [Tr. 132].

Plaintiff testified that medication taken for anxiety and pain causes drowsiness, resulting in the need to take multiple naps per day. [Tr. 259-60, 267]. Between naps, plaintiff does "a lot of walking and driving," mows with a riding lawn mower, picks up sticks, trims hedges, performs other yard work, hunts and fishes at least two days per month, shops, eats at restaurants at least twice per week, performs household chores, changes tires, and simultaneously maintains "a few girlfriends." [Tr. 98, 102, 106, 108, 132, 163-64, 223, 265].

### A. <u>Vocational Evidence</u>

Plaintiff has worked as a Holiday Inn maintenance man and as a tree farm laborer. [Tr. 89, 112]. He testified that if he were still physically able to work, "[he] would, [he] definitely would." [Tr. 273]. Plaintiff further testified that he "pushed himself" to appear at the Holiday Inn even though he "never felt like going to work." [Tr. 274]. He also stated that the Holiday Inn manager "understood the [physical] pain I went through" and would allow him to "come in and work one, two, three, four, five, just ever how many hours that I could work, and let me leave." [Tr. 279]. In addition, plaintiff's mother testified that,

3

but for his physical ailments, plaintiff is a "feisty, hard worker" and "a fire stack" who "run[s] rings around two or three men[.]" [Tr. 276].

Conversely, the objective record sheds a different light on plaintiff's work history. An Employment Report, in question and answer format, was completed in October 2001 by the general manager of the Holiday Inn. [Tr. 120-22]. The manager indicates that plaintiff was fully capable of performing his job "when he actually came to work." [Tr. 120-22]. Plaintiff's attendance problems were not reported to be caused by any physical or emotional ailment, but rather by "*a drinking problem that gets in the way of his ability to get to work*." [Tr. 122] (emphasis added). The manager further reported that plaintiff was fired "due to failure to report to work." [Tr. 207].

## B. Alcohol

Obviously, plaintiff's alcohol consumption is an issue in this appeal. At the administrative hearing, plaintiff was questioned at some length by his counsel on this point.

Q: Okay. Now let me, up front let me ask you this. Your doctors at one time you drank [sic], and you went through recovery, is that correct?

A: That was in '95.

Q: Any you've been free of alcohol since then, is that correct?

A: I drank a lot to kill my pain, because I thought, just to be honest, it may sound crazy to you. But I hurt so bad I thought I was ate up with cancer, before I learned that, what was wrong with me.

Q: But you worked quite awhile after that?

A: Oh, yeah.

4

Q: You continued working?

A: I kept pushing myself.

Q: But you're not drinking anymore, correct?

A: No, I do not drink.

. . .

Q: So in 1995, you had a drinking problem so severe that you went to recovery?

A: I did.

Q: And you beat that?

A: I beat that.

. . .

Q: . . . But basically, you worked for several years after beating the drinking problem, with the arthritis and at the Holiday Inn and the tree work?

A: I have, I had to push myself.

[Tr. 262-63, 273-74]. These responses are somewhat vague as to the date plaintiff allegedly stopped drinking, but the clear impression conveyed is that he has not significantly consumed alcohol since 1995.[1]

Also, on his September 28, 2001 Disability Report, plaintiff wrote that "My nerves has be bad as far back as I can remeber, I used drinking for year's to I learn that was not the answer. . . . I still drink a little sometime's when I feel so bad, but not often and will

---

[1] Although the date discrepancy is irrelevant, plaintiff elsewhere told the Commissioner that he "completed" inpatient treatment for alcohol addiction in 1996. [Tr. 91].

5

never make it a habit, like I once did." [Tr. 95-96] (reproduced as in original).[2]

Dr. William Kenney conducted a mental status examination on November 30, 2001. Dr. Kenney recorded that plaintiff

> denied any current issues with drugs or alcohol. He said he [was] a heavy drinker up until 1994 or 1995 when he went to Turning Point in Oakridge [sic] for alcohol problems. This was the only alcohol treatment noted _and he said he has not been drinking since then_.

[Tr. 163] (emphasis added). However, contrary to the above-cited assertions, plaintiff on October 24, **_2000_**, admitted to Dr. Robert Wilson that he "**_will go a day or two without drinking but most times he will stay drunk for five to six days at a time_**." [Tr. 196] (emphasis added).

## C. Treating Sources

Plaintiff first visited Dr. James Burns in December 1997, with complaints of joint and muscle pain. [Tr. 213]. Dr. Burns suspected "early osteoarthritis." [Tr. 214]. "Hypertrophic pulmonary osteoarthropathy" was also suspected, secondary to plaintiff's consumption of two packs of cigarettes per day. [Tr. 213-14].

Plaintiff saw Dr. Burns four more times over the following four years. [Tr. 208-12]. Then, in an October 2001 letter to the state disability examiner, Dr. Burns wrote that plaintiff

---

[2] In passing, the court observes that directly below the space in which plaintiff wrote this statement (and directly above his signature), the Disability Report form warns in bold type that "Anyone making a false statement or representation of a material fact for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law." [Tr. 96].

6

has been under my care for diffuse osteoarthritis, osteopenia, and elevated muscle enzymes of uncertain significance. His follow-up has covered a four year span since 1997. He has had difficulty performing physical labor for several years and has been unable to put in a full day at his previous job. He has no previous training or background for more sedentary activity. His limitations include 30 degrees of lateral flexion, limitation in the cervical spine, decreased hand grip strength with bony enlargement of the PIP and DIP joints, tenderness in the lumbar spine, and crepitus in the knee areas. Bone scan has shown uptake and abnormalities in the feet, and degenerative changes have been documented in the thoracic spine on x-ray. His prognosis is guarded and he is likely to worsen over time in spite of treatment with multiple anti-inflammatory agents. Based on these issues, I feel that he is entitled to disability benefits.

[Tr. 206].[3]

Plaintiff has also been treated by Dr. Robert Wilson. At his initial October 24, 2000 appointment, plaintiff complained of "nerves" and depression. [Tr. 196]. As noted above, plaintiff further disclosed that he "***will go a day or two without drinking but most times he will stay drunk for five to six days at a time***." [Tr. 196] (emphasis added). Dr. Wilson wrote that plaintiff's arthritis was controlled with medication. [Tr. 196]. He "recommend[ed] that the mother remove the guns from the home as the patient's judgment is impaired usually when he is drunk." [Tr. 196]. In light of elevated blood pressure, Dr. Wilson "stressed the importance of the patient to abstain from alcohol[.]" [Tr. 195].

Plaintiff returned to Dr. Wilson's office one month later, claiming that he "has had no alcohol since his last visit." [Tr. 194]. Dr. Wilson described plaintiff as "doing very

---

[3] Following the initial 1997 consultation, Dr. Burns noted a "*[p]rior* detox from alcoholism" and "[h]eavy alcohol intake *in the past*." [Tr. 213] (emphasis added). The subsequent six years of medical records provided by Dr. Burns make no further mention of that condition, and there is no indication that the physician was aware of the ongoing nature of plaintiff's conduct.

7

well" and noted that plaintiff had been working more. [Tr. 194]. In January 2001, plaintiff reported that his depression and anxiety were "much better" with medication, and he reported no side effects. [Tr. 192]. In March 2001, plaintiff reported that his anxiety, depression, hypertension, *and* arthritis were all well-controlled with medication. [Tr. 189]. In April 2001, plaintiff again reported good pain control, but pain and swelling of the elbow was noted due to repetitive motion at work. [Tr. 188]. Dr. Wilson did not "suspect any acute type injury" [Tr. 188], and the following month the elbow was "doing a lot better." [Tr. 187].

In June 2001, depression, anxiety, and hypertension were "doing well" and "significantly improved." [Tr. 186]. Dr. Wilson noted no arthritic complaints. [Tr. 186]. In August 2001, plaintiff first complained of irritable bowel symptoms. [Tr. 184]. In December 2001 (three months after his alleged disability onset date), plaintiff advised Dr. Wilson that he had "been doing very well recently." [Tr. 183]. His arthritis medication, specifically, was "doing well." [Tr. 183]. The following month, plaintiff again complained of irritable bowel symptoms. [Tr. 182]. In response to cholesterol levels that were "way too high," Dr. Wilson instructed plaintiff to "stop alcohol and greasy foods." [Tr. 199].[4]

---

[4] Plaintiff testified that his purported disability is based, in part, on irritable bowel syndrome. [Tr. 268]. He acknowledged, however, that prescription medication "takes care of it pretty good." [Tr. 269]. Plaintiff is "supposed to take it [the medication] every day and I should do that, but I don't sometimes. I don't take it every day like I should sometimes, but I should take it every day." [Tr. 270]. Plaintiff's decision to not take medication that admittedly cures his allegedly disabling ailment is due to his "own assumption" that the medication will cause him to "lose the muscle in there." [Tr. 271]. This assumption stems from something that his mother read in "this book." [Tr. 275]. The record further indicates that plaintiff instead treats some of his conditions with "concoctions" brewed by his mother. [Tr. 277].

8

On March 11, 2002, Dr. Burns commented that plaintiff "remains disabled," with inabilities to stand, walk, or use his hands for more than one hour at a time. [Tr. 146]. In June 2002, based on complaints of pain and observations of crepitus in the hands and knees, Dr. Wilson wrote that plaintiff "essentially is unable to work due to the pain and the stiffness that he has" secondary to "severe osteoarthritis." [Tr. 226]. Contemporary spinal x-rays, however, documented "only very minimal degenerative arthritis" [Tr. 216] and a July 2002 MRI of the neck was "normal." [Tr. 235]. January 2003 hip x-rays were "normal." [Tr. 231]. A January 2003 spinal MRI showed only "a small bulging disc but no pressure on [the] nerves." [Tr. 229, 241]. A February 2003 MRI of the hips was again "normal." [Tr. 228, 240].

Lastly, in September 2002, plaintiff complained of chest pain. [Tr. 223]. He underwent bypass surgery the following month. [Tr. 222]. Plaintiff testified that he has successfully recovered from the surgery, and that his chest pain is "gone." [Tr. 262]. On March 6, 2003, surgeon Mitchell Goldman wrote that plaintiff suffers from claudication and corresponding aortoiliac disease. [Tr. 218]. Dr. Goldman recommended smoking cessation and exercise. He did not think that this condition was "lifestyle limiting with respect to his activities presently. However, if he were to return to work it may be." [Tr. 218].

D. <u>Consultative and Non-Examining Sources</u>

Subsequent to his 2001 mental status examination and interview, Dr. Kenney predicted that plaintiff would be moderately limited in social interaction, and limited in adaptation, concentration, and persistence. [Tr. 165]. Dr. James Wilson then completed a Psychiatric Review Technique on January 23, 2002. He predicted no limitations of more than a mild degree. [Tr. 176].[5]

Dr. Joseph Johnson performed a consultative physical examination on November 8, 2001. Plaintiff reported "aching all over his body, which he attributes to osteoporosis and osteoarthritis." [Tr. 154]. He admitted drinking only "an occasional beer." [Tr. 155]. On examination, Dr. Johnson described plaintiff's motor strengths and ranges of motion as slightly limited to full. [Tr. 155-56]. Limitations in ankle extension and speed of movement were thought to be at least partially caused by anxiety. [Tr. 155-56]. Dr. Johnson noted plantar fasciitis of the right heel. [Tr. 156]. He concluded that plaintiff

> should be able to sit for more than 6 hours during an 8-hour day. He should be able to stand or walk for 4 hours during an 8-hour day. He should be able to routinely lift 15 pounds and occasionally lift 25 pounds. Work restrictions are based on plantar fasciitis and his subjective complaints.

[Tr. 156]. Dr. Hamsaveni Kambam subsequently generated a Physical Residual Functional Capacity Assessment on November 27, 2001. Dr. Kambam predicted capacities of occasionally lifting up to twenty pounds, frequently lifting up to ten pounds, sitting

---

[5] Dr. James Wilson also observed that plaintiff "currently states no drug or alcohol problem . . . which is inconsistent with" the medical and employment records. [Tr. 178].

approximately six hours per workday, and standing/walking at least two hours per workday. [Tr. 158].

## E. Evidence Submitted to the Appeals Council

In October 2003, plaintiff submitted a one-page Medical Questionnaire (completed by Dr. Burns) to the Appeals Council. [Tr. 247]. Plaintiff's attorney wrote that "[t]here was a communications error between my office and Dr. Burns' office and I was not able to obtain his opinion in time for the hearing or during the period of time that the record was held open for me to do so." [Tr. 248]. Citing the presence of osteoarthritis, reduced bone mass, and decreased muscle strength, Dr. Burns opined (without further explanation) that plaintiff satisfies five of the Commissioner's listed musculoskeletal impairments. [Tr. 247].

## III.

### *Vocational Expert Testimony*

Vocational expert Julian Nadolsky ("Dr. Nadolsky" or "VE") testified at plaintiff's administrative hearing. Dr. Nadolsky characterized plaintiff's past relevant work as heavy and semi-skilled. [Tr. 280-81]. The ALJ offered a vocational hypothetical, assuming a claimant of plaintiff's age, work experience, and limited literacy subject to the following additional restrictions:

> complaints of osteoarthritis that has diffusely spread throughout the body. . .
> . coronary artery bypass surgery . . . complaints of clotication [sic] with pain
> and numbness of the right leg. . . . complaint[s] of depression, anxiety, and
> irritable bowel syndrome. Assume that he's limited to light exertion . . . that

11

he needs to alternatively sit or stand to avoid being on his feet for prolonged periods. That the irritable bowel syndrome is controllable with medications. That depression and anxiety are improved with medications, however I don't think that he could work closely with others . . . in a very intimate fashion.

[Tr. 281].

Dr. Nadolsky responded that the worker could not perform plaintiff's past relevant work because those jobs were "much too physically demanding." [Tr. 281]. However, other specified jobs would be available to the hypothetical claimant (approximately 1,200 jobs in the local economy / approximately 1,500,000 nationally). [Tr. 281-82].

If the hypothetical worker could use his hands and arms only "frequently" (as opposed to "constantly"), the VE opined that the number of applicable jobs would be drastically reduced. [Tr. 282-84]. Dr. Nadolsky further testified that none of the listed jobs would be available if plaintiff's testimony was fully credited due to pain, fatigue, and drowsiness. [Tr. 284].

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206,

217, 83 L. Ed. 126 (1938)).  The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability.  42 U.S.C. § 423(a)(1).  "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[6]  Disability is evaluated pursuant to a five-step analysis summarized as follows:

---

[6] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  42 U.S.C. § 1382.  "Disability," for SSI purposes, is defined the same as under § 423.  42 U.S.C. § 1382c(a)(3).

13

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520 (1997)).  Plaintiffs bear the burden of proof during the first four steps.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *See id*.

## V.

### *Analysis*

The following issues are raised on appeal:

1. Dr. Burns' late-submitted Medical Questionnaire warrants remand.

2. Plaintiff is a credible and "refreshingly candid" claimant.

3. Plaintiff's impairments meet or equal the Commissioner's musculoskeletal listing 1.02.

The court will address these contentions in turn.

14

## A. <u>Sentence Six</u>

The Appeals Council considered plaintiff's additional evidence but denied his request for review.[7]  "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

This court can, however, remand a case for further administrative proceedings, but only if the claimant shows that his evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g).  *Id*.  Sentence six mandates that, before a claim will be remanded for consideration of additional evidence: there must be new evidence presented; that evidence must be material; and there must be good cause for the

---

[7]

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> The Appeals Council has received a statement dated October 13, 2003, from the claimant's treating rheumatologist, Dr. James Burns.  Dr. Burns has opined that the claimant meets a musculoskeletal listing found in Appendix 1 of Subpart P of Part 404 in the Code of Federal Regulations.  However, specific listing is identified [sic].  Furthermore, imaging studies of the claimant's chest, neck, back and hip were submitted after the hearing and showed either negative or mild clinical findings (Exhibit 12F).  The present record does not support Dr. Burns' opinion.

[Tr. 6].

failure to present it at the hearing level. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The claimant bears the burden of proof. *Id*.

Plaintiff's brief to this court makes no effort to address sentence six's "good cause" requirement. The only attempt at a "good cause" explanation is instead found in the administrative record, where counsel stated that "[t]here was a communications error between my office and Dr. Burns' office and I was not able to obtain his opinion in time for the hearing or during the period of time that the record was held open for me to do so." [Tr. 248]. Cursory reference to "a communications error" does not meet sentence six's "good cause" requirement. *See Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) ("Nothing in the record indicates any good cause for the failure to elicit medical testimony . . . prior to the close of the proceedings before the ALJ. If counsel for Appellant believed there was evidence . . . in support of the claim of disability, that evidence should have been before the ALJ."). For this reason alone, the request for sentence six remand must be denied.

Further, Dr. Burns' Medical Questionnaire is not "material." To show materiality, a claimant must demonstrate a "reasonable probability" that the ALJ would have reached a different decision if presented with the new evidence. *Sizemore,* 865 F.2d at 711. The Medical Questionnaire is little more than a conclusory statement that plaintiff is "disabled." As will be discussed below, the record before the ALJ already contained several such conclusory statements by plaintiff's treating physicians. Cumulative evidence is not

16

"material."  *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

Plaintiff has failed to demonstrate either "good cause" or "materiality."  His request for sentence six remand must accordingly be denied.

B. <u>Credibility</u>

As noted, the ALJ found plaintiff's credibility "lacking" and thus did not accept his subjective complaints.  Specifically, the ALJ cited plaintiff's October 2000 admission to Dr. Robert Wilson

> that he will go a day or two without drinking, but most times he will stay drunk for five to six days at a time.
>
> . . .
>
> The claimant has a history of ethanol abuse and while he alleges that he has not been drinking since 1994 or 1995, he told Dr. Wilson on October 24, 2000 (Exhibit No. 4-F) that he stays drunk 5 or 6 days at a time.  This detracts from his credibility.  In this regard, the claimant is reminded that according to Public L. 104-121, as amended, if an individual has a drug addiction and/or alcoholism that is a contributing factor material to the determination of your disability, the undersigned will find you not disabled pursuant to Sections 223(d)(2) and 1614(a)(3) of the Social Security Act.  While, as above indicated, the claimant alleges that he has stopped drinking alcohol, his credibility in this regard is lacking.  In all probability, his irritable bowel syndrome is exacerbated by his alcohol consumption and noncompliance with medications.
>
> . . .
>
> . . . The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

17

[Tr. 18, 20, 22].[8]

Although he now acknowledges that "he failed to admit that he still had a drinking problem with alcohol as recently as the year 2000," plaintiff nonetheless urges this court to find him a credible and "refreshingly candid" claimant. [Doc. 29, p. 9-10]. Plaintiff argues that his myriad misstatements and omissions regarding his alcohol abuse have no bearing on his tendency to tell the truth regarding other issues.

This contention "simply fails the straight face test." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 977 (M.D. Tenn. 2002). A claimant who repeatedly lies (both to the medical sources and under oath) regarding one issue must accept that he likely will not - and should not - be believed *as to any issue*. The present administrative record contains

---

[8] In addition to the facts cited by the ALJ, the court observes that:

1. Plaintiff also told the consultative examiner that he has not consumed alcohol since 1994 or 1995.

2. The records of treating physician Burns (upon whose conclusory findings of "disability" plaintiff so heavily relies) indicate that plaintiff also misinformed that physician regarding his extraordinary alcohol consumption. [Tr. 213] (dated 1997, noting only "prior" and "past" alcoholism).

3. Although plaintiff alleges that he stopped working at the Holiday Inn due to disability, the evidence provided by the Holiday Inn manager indicates that: (1) plaintiff was fully capable of performing his job "when he actually came to work"; and (2) plaintiff was fired due to "*a drinking problem that gets in the way of his ability to get to work*." [Tr. 120-22, 207] (emphasis added).

4. A mere month after being fired because of his alcoholism, plaintiff told the Commissioner (on his Disability Report) that he no longer has a drinking problem. [Tr. 91, 95-96].

18

abundant evidence that plaintiff is a claimant who simply is not "shooting straight" with either the Social Security Administration, the medical sources, or this court. Substantial evidence therefore supports the ALJ's credibility finding.

> [A]fter listening to what [plaintiff] said on the witness stand, observing his demeanor, and evaluating that testimony in light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment. It is a difficult job, and the people who perform it sometimes err. Such errors are obviously difficult for a reviewing court to detect (the reviewing court not having seen the claimant in the flesh), and we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact. *We would be particularly reluctant to do so in this case, where there seem to be demonstrable discrepancies between what the claimant said on the stand and what the written record shows*.

*Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (emphasis added).

## C. Listing Level Severity

Lastly, plaintiff contends that his condition meets or equals the Commissioner's musculoskeletal listing 1.02. Initially, the court notes that listing 1.02 was revised between the date of plaintiff's benefits applications and the date of the ALJ's decision. Plaintiff argues that he meets or equals the earlier listing, which he mistakenly refers to as the revised listing.

19

The version of § 1.02 in effect on the date of plaintiff's application required

1.02 Active rheumatoid arthritis and other inflammatory arthritis. With both A and B.

A. History of persistent joint pain, swelling, and tenderness involving multiple major joints (see 1.00D) and with signs of joint inflammation (swelling and tenderness) on current physical examination despite prescribed therapy for at least 3 months, resulting in significant restriction of function of the affected joints, and clinical activity expected to last at least 12 months; and

B. Corroboration of diagnosis at some point in time by either:

1. Positive serologic test for rheumatoid factor; or

2. Antinuclear antibodies; or

3. Elevated sedimentation rate; or

4. Characteristic histologic changes in biopsy of synovial membrane or subcutaneous nodule (obtained independent of Social Security disability evaluation).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (2001). The amended listing 1.02 in effect on the date of the ALJ's decision required

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

20

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (2003).

The law of this circuit is presently unsettled as to which version of the listings should be applied. In *Combs v. Commission of Social Security*, 400 F.3d 353 (6th Cir. 2005), the Sixth Circuit held that a claimant must be judged under the rules that were in effect on the date of his application. *Combs*, 400 F.3d at 360. The *Combs* decision was, however, vacated on July 15, 2005, pending en banc rehearing.

Regardless of the presently unsettled nature of Sixth Circuit law (and irrespective of plaintiff's confusion as to the date of § 1.02's amendment), substantial evidence supports the conclusion that plaintiff neither meets nor equals *either* version of the listing.[9] As to the 2001 version, plaintiff points to no objective testing results as required by § 1.02B (2001). Further, the objective evidence of record, paired with plaintiff's admitted activities and his extremely diminished credibility, supports the conclusion that he does not have: (1) "significant restriction of function of the affected joints" as required by the 2001 listing; or (2) either the "inability to ambulate effectively" or the "inability to perform fine

---

[9] The ALJ's decision does not indicate which version was applied in this case.

and gross movements effectively" as required by the 2003 listing (and as those terms are restrictively defined by §§ 1.00B2b and 1.00B2c of the 2003 listings).

Nor are Dr. Burns' opinions of "disability" sufficient documentation that plaintiff meets or equals a listed impairment. The ultimate issue of "disability" (or "inability to work") is reserved to the Commissioner, not the treating source. *See* 20 C.F.R. § 404.1527(e)(1).[10] Further, the opinion of a treating source is entitled to controlling weight only if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(d)(2).

Although treating sources have sometimes described "severe" arthritis, plaintiff's x-rays and MRI's have generated normal or minimal findings, including "only very minimal degenerative [spinal] arthritis." [Tr. 216, 228-29, 235, 240-41]. Further, the ALJ's conclusions are consistent with the results of the consultative mental and physical examinations. Also, as discussed, Dr. Burns' conclusions were reached without knowledge of plaintiff's severe alcohol abuse and are thus of dubious value.[11]

---

[10] For example, Dr. Burns' October 2001 disability letter states that plaintiff is in part disabled because "[h]e has no previous training or background for more sedentary activity." [Tr. 206]. Issues of job requirements and training are not to be determined by the treating physician.

[11] For example, Dr. Burns' October 2001 disability letter states that plaintiff had for some time been physically "unable to put in a full day at his previous job." [Tr. 206]. However, other evidence (as discussed) indicates that it was plaintiff's alcohol consumption which rendered him "unable to put in a full day at his previous job" - a fact which plaintiff appears to have never disclosed to Dr. Burns.

The record indicates that plaintiff's depression and irritable bowel syndrome respond positively to medication. Plaintiff's heart problems are largely resolved. Although Dr. Goldman opined that plaintiff's claudication might limit a "return to work" [Tr. 218], the ALJ did not conclude that plaintiff could "return to work." He instead concluded that plaintiff could perform alternate, less physically demanding jobs than those he had previously performed.

Again, in light of plaintiff's multiple misrepresentations and omissions, substantial evidence supports the ALJ's decision to not fully credit *any* of his subjective complaints. Also, as noted by the ALJ, plaintiff's alcohol abuse very likely creates or worsens his other conditions. "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

The final decision of the Commissioner will therefore be affirmed. An order consistent with this opinion will be entered.


ENTER:


_____s/ Leon Jordan_____
United States District Judge

23